# MERRIMACK,

## JULY TERM, A D. 1853.

---

## OSGOOD *v.* CLARK & *a.*

A village precinct authorized by the act of July 6, 1849, must include the whole
village.

Case lies against selectmen for illegally assessing and collecting taxes.

CASE for the assessment and collection of an illegal tax.

September 4th, 1849, ten legal voters of the village in
Hopkinton, petitioned the selectmen of said town to estab-
lish a village precinct, agreeably to act of July 6, 1849.
Thereupon, on the 10th, the selectmen established a precinct,
and on the 11th issued a warrant for a meeting.

Notice was given and a meeting of said precinct duly
held on the 29th, at which the act of July 6, 1849, was
adopted, and a vote passed to raise money. October 1st a
petition, signed by twenty-eight voters of said precinct, was
presented to the selectmen for a meeting of said precinct,
with an article in the warrant for the re-consideration of the
vote adopting the act aforesaid.

Notice was given and a meeting held for that purpose,
October 27th, at which said vote was re-considered. July
6th, 1850, a petition of some legal voters was presented to
the selectmen to change and fix the bounds of the precinct,
&c., and thereupon, on the 27th of August, they altered said
bounds, by excluding territory included in the precinct as
first established. This was done without any notice to the
voters of the precinct as first established.

August 31st a warrant was issued for a meeting of the new precinct, and a meeting called and held September 18th, at which officers were chosen, the act of July 6, 1849, adopted, and a vote passed to raise $200.

A tax was thereupon assessed by the defendants, then selectmen of the town, to raise said sum, and a warrant issued by them for the collection of the same. The plaintiff did live within the first precinct, but not within the new precinct, but had property within it, and it is on account of the tax assessed on that property that this suit is brought.

It was agreed that either party should have the right to refer to any of the records in the premises. And the plaintiff reserved all advantages of any defect of record; and the case was submitted for the opinion of this court on the questions arising on the foregoing statements and records.

For the purpose of determining all the questions arising in this case, it was agreed that it should be considered by the court, that the precinct first established included all the village, and as next established did not; with the right, however, to either party to have a trial by the jury hereafter as to this and any other material point in the case.

*George & Foster*, for the defendants.

I. The plaintiff's remedy, if he has sustained any injury, upon the facts shown, was by an action of *trespass*. He cannot properly declare in *case*.

The injury to the plaintiff was not a consequential result of a negligent, careless or improper discharge of authority. It did not arise from the force of the original act of the defendants—the assessment of the tax; but the injury to the plaintiff was the immediate force of the defendants' act in taking the plaintiff's wagon. *Stovehouse* v. *Elliot*, 6 Term Rep. 315; *Parsons* v. *Lloyd*, 3 Wilson 341; *Thames Man. Co.* v. *Lathrop*, 7 Conn. 557; *Agny* v. *Young*, 11 Mass. Rep. 220; Oliver's Precedents 347; *Gage* v. *Currier*, 4 Pick. 399; *Ingle* v. *Bosworth*, 5 Pick. 502; *Little* v. *Mer-*

Osgood *v.* Clark.

*rill,* 10 Pick. 543; *Young* v. *Hyde,* 14 N. H. Rep. 35; *Dalton* v. *Favour,* 3 N. H. Rep. 35.

II.   The voters of the precinct had power to re-consider the vote adopting the act of July 6, 1849; and the re-consideration of that vote amounts to an annihilation of the precinct.   There being, then, no village precinct existing, the selectmen had the same authority to fix and establish a precinct, which they had at the time when the application was first made to them for that purpose.

III.   The proceedings of the selectmen, in establishing a new precinct, were legal and regular.

They were requested by the requisite number of legal voters " to change and *fix* the boundaries of said village precinct;" they did " *determine* and *set off,* as the Hopkinton village precinct, all the territory," &c.

IV.   No notice was required to any of the voters of Hopkinton of the location of the new precinct, other than such notice as was given by posting up warrants calling a meeting of the voters in said new precinct, there being no other precinct in existence whose inhabitants could be affected by the location of the new precinct.

V.   But even if the voters of the first precinct had no power to re-consider the vote adopting the act of July 6, 1849, the selectmen had power to change the boundaries of the precinct.   *Waldron* v. *Lee,* 5 Pick. 333; *Richards* v. *Daggett,* 4 Mass. 534.

VI.   Such change having been made before anybody's rights had been affected by the previous organization, and after the voters of the original precinct had declined to avail themselves of the act of July, 1849, no notice was required to the voters of the original district.

VII.   If any notice was required, the record of the selectmen, open to the inspection of the town, and their warrant calling a meeting of the voters in the new precinct, which remained posted fourteen days at two of the most public places in the village, would seem to be sufficient notice.

---
---

VIII. The act of the selectmen in locating the precinct was judicial. They had full jurisdiction of the matter. We have no right to look behind their action in the premises, and say that, in our judgment, the precinct as last established does not include the whole village. They considered that it did, and their decision is conclusive on that point.

*D. & D. J. Clark*, for the plaintiff.

From the case it appears that the selectmen, on the 10th day of September, 1849, established a village precinct in the town of Hopkinton, which was once adopted by the inhabitants of the precinct.

The plaintiff contends that this was the extent of the selectmen's authority, given them by the statute; that having once established the bounds of the precinct, and called a meeting of the legal voters of such precinct, the authority to " fix and establish " boundaries ceased. *Keyes* v. *Westford*, 17 Pick. 273.

When the bounds of the precinct were once established, it was optional with the voters of the precinct to adopt the act of July 6, 1849, or not; and whether the said act was adopted or not would make no difference with the authority of the selectmen, in relation to the bounds of the precinct.

The statute of July 6, 1849, contemplated but one precinct in a village, and made no provision for any change of the boundaries. The law of July 6, 1849, is analagous to the establishment of a school district upon petition, when towns have neglected to divide the town into districts, and it is not contended that the selectmen could in any wise alter the bounds of a district which has once been established. *Johnson* v. *Dole*, 4 N. H. Rep. 478.

By the establishment of the precinct, September 13th, 1849, and by the adoption of the act of July 6, 1849, by the voters of the precinct, a *quasi* corporation was created, and went into operation with rights of which they could not be

divested by the subsequent acts of the selectmen, at least without consent, and much less without notice. Angel & Ames on Corporations, Introduction 20, § 5; ch. 11, § 8, (3d ed.)

The acts of the selectmen, in attempting to alter and fix the boundaries of the precinct, August 27th, 1850, was then illegal and void, and the new precinct was not legally established, and all proceedings under it are void. *Perry* v. *Dover*, 12 Pick. 213; *Withington* v. *Eveleth*, 7 Pick. 106; *Commonwealth* v. *Heare*, 2 Mass. Rep. 102; *Gorrill* v. *Whittier*, 3 N. H. Rep. 265; *Robbins* v. *Bridgewater*, 6 N. H. Rep. 524; *Keyes* v. *Westford*, 17 Pick. 273; *Case of the Borough of West Philadelphia*, 11 U. S. Dig. 845, § 121.

Further, the statute provides that such precinct shall include the village and parts adjacent. The selectmen did not include in the new precinct all the village, and, therefore, the new precinct was not legally established.

If the selectmen proceeded illegally all is void, and the validity of their doings may be called in question collaterally. *Robbins* v. *Bridgewater*, 6 N. H. Rep. 524, and the cases there collected.

WOODS, J. By the act of July 6, 1849, Pamphlet Laws, ch. 852, § 1, and ch. 116, § 1 of the Compiled Statutes, it is provided that " upon petition of ten or more legal voters, inhabitants of any village situated in any town, or in two or more towns in this State, the selectmen of such town or towns shall fix, by suitable boundaries, a village precinct, for the purposes hereinafter mentioned, including therein the said village, and such parts of said town or towns adjacent thereto as may seem to them convenient, and make a record thereof." On the 10th day of September, 1849, the selectmen of Hopkinton, in pursuance of a petition for that purpose, established a precinct; and on the 29th of September, in pursuance of the provisions of this act, the precinct was fully organized, embracing a village in Hopkinton.

On the 27th of October, 1849, at a meeting of the voters called for that purpose, by formalities described in the case, a vote was taken to re-consider the vote by which the act of July 6, 1849, had been adopted. And on the 27th of August, 1850, in pursuance of a petition, the selectmen altered the bounds assigned for the precinct first established, so as to exclude a part of the village, the whole village having been embraced in the first.

It will not be necessary to determine what was the legal effect of the vote of October 27, 1849, or whether the power given by the statute to the selectmen, upon petition, " to fix by suitable boundaries a village precinct," involves the power of altering them after the precinct has been organized by a meeting of its inhabitants, and an adoption by them of the act.

*If such* power existed, it was not in this case exerted in conformity with the provisions of the statute, which requires the entire village to be included in the precinct. No discretion seems to be vested in the selectmen, which can justify them in establishing a precinct embracing a part only of the village, either by the words of the statute or its policy.

The proceedings taken to establish the new precinct having been ineffectual, the tax of $200, mentioned in the case, was illegally assessed; and the defendants, in assessing and collecting the sum assessed upon the plaintiff, are, consequently, liable to him in damages.

It is said that the plaintiff has mistaken his remedy, and should have brought an action of trespass *vi et armis,* instead of the action for consequential damages.

In *Gibson* v. *Fisk,* 8 N. H. Rep. 404, which was an action on the case for driving the plaintiff's sheep, found in the defendant's close, to an unreasonable distance, and to the injury of the plaintiff, a similar objection was taken to the form of the action. But the court held, that although by the abuse of his power and authority to drive the sheep

Osgood *v.* Clark.

out of his own close, he had made himself a trespasser, and that an action of trespass might have been maintained, yet it was a well settled principle, that in cases where trespass or trover will lie at the election of the party, he may waive both the trespass and the conversion, and recover in a special action on the case.

In *Walker* v. *Cochran*, 8 N. H. Rep. 166, which was trespass against selectmen for an illegal seizure, the form of the remedy was objected to, and the court held that the plaintiff had an election to treat the wrongful assessment, which arose in that case from illegally dooming the plaintiff, as the injury, and declare in case, or to treat the seizure of the property as the ground of action and bring trespass.

In *Perry* v. *Buss*, 15 N. H. Rep. 222, it was held that a like election existed where the party was not liable to any tax, or when the selectmen had no authority to make one.

So far as appears by the case, this form of action may be fully justified by the rule laid down in either of the cases cited.

The gravamen stated is the assessment and collection of an illegal tax. The assessment of such a tax is clearly in no view a trespass, nor unless by collection, something more is intended than receiving the money voluntarily tendered or paid, is that a trespass. But the plaintiff has a right to allege and prove a compulsory collection of it as an injury consequential upon the illegal assessment, and waiving the trespass, if it exists, recover his damages in the mild form of the present action. And upon this ground we hold that it is well brought.

*Judgment for the plaintiff.*